UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHELLE STOGNER                                          CIVIL ACTION

VERSUS

CHRIST STURDIVANT, ET AL                                  NO. 10-125-JJB-CN

## RULING & ORDER

This matter is before the Court on the "Motion for Protective Orders and to Quash Defendants' Subpoenas Duces Tecum for Production of Documents based on Attorney/Client and Medical Records Privileges" (R. Doc. 84) filed by plaintiff, Michelle Stogner ("Mrs. Stogner"). Defendants, Willie Graves, Sheriff of Livingston Parish ("Sheriff Graves"); Randy Dufrene, Chief of Police for the Town of Livingston ("Chief Dufrene"); Livingston Parish Sheriff's Deputies, Chris Sturdivant ("Deputy Sturdivant"), Jason Ard ("Deputy Ard"), Alex Petho ("Deputy Petho"), Randy Dufrene, Jr. ("Deputy Dufrene Jr."), and Aldon Thomassen ("Deputy Thomassen"); and Town of Livingston Police Department Officer, Brant Melerine ("Officer Melerine") (collectively "defendants"), have filed an opposition (R. Doc. 88) to the present motion.

## FACTS & PROCEDURAL BACKGROUND

On February 22, 2010, Mrs. Stogner filed suit against the defendants on behalf of her late husband, Donel Stogner ("Mr. Stogner"), under 42 U.S.C. §1983, 42 U.S.C. §1988, and state law for the personal injuries sustained by Mr. Stogner as a result of the alleged intentional tort of battery, torture, and wrongful death inflicted upon him on July 5, 2009 by Deputies Sturdivant, Petho, and Dufrene, Jr., and by Officer Melerine. Mrs. Stogner also

1

sued Officer Thomassen for negligent infliction of emotional distress based upon the manner in which he reported the death of Mr. Stogner to Mrs. Stogner and her family. Mrs. Stogner also claims that Sheriff Graves and Chief Dufrene negligently trained the officers under their command, causing them to engage in the wrongful acts alleged.[1]  On October 14, 2010, the Court issued a ruling dismissing Mrs. Stogner's §1983 claims against Sheriff Graves and Deputies Petho and Dufrene, Jr. and dismissing Mrs. Stogner's §1983 claims against Deputy Sturdivant for conducting a warrantless search and seizure on Mr. Stogner and for deliberate indifference.  The Court, however, denied the defendants' motion for summary judgment relative to Mrs. Stogner's §1983 claim against Deputy Sturdivant for use of excessive force.

The present motion arises from three (3) Rule 45 subpoenas for the production of documents that were issued by defendants, Sheriff Graves, Deputy Dufrene, Jr., Deputy Ard, Deputy Petho, Deputy Thomasson, and Deputy Sturdivant, to: (1) Mrs. Stogner's former divorce attorney, Charlotte Pugh, who had handled domestic proceedings involving Mr. and Mrs. Stogner, and (2 & 3) various healthcare providers and a pharmacy that have provided services to Mrs. Stogner.  The subpoena directed to Mrs. Stogner's counsel seeks

---

[1] The Court has previously recognized that the following facts relating to this case are undisputed.  On July 5, 2009, at approximately 4:20 a.m., Deputy Sturdivant conducted a traffic stop of Mr. Stogner.  After both parties had exited their vehicles, Deputy Sturdivant noticed that Mr. Stogner was holding a small plastic bag in his right hand.  Deputy Sturdivant asked Mr. Stogner what was in his hand; Mr. Stogner replied that he had nothing in his hand.  Deputy Sturdivant then asked Mr. Stogner to release the bag, but Mr. Stogner again replied that he had nothing in his hand.  Deputy Sturdivant then grabbed Mr. Stogner's hand, forced Mr. Stogner up against his unit and attempted to handcuff him.  While being handcuffed, Mr. Stogner transferred the bag into his mouth.  For several minutes, Deputy Sturdivant and Mr. Stogner were engaged in a one-on-one struggle, during which time Deputy Sturdivant choked Mr. Stogner, wrestled him to the ground, and hit him in the back of the head with his fists and forearms.  Soon thereafter, Officer Melerine and Deputy Petho arrived at the scene and assisted Deputy Sturdivant in handcuffing Mr. Stogner.

After the officers successfully handcuffed Mr. Stogner, Deputy Dufrene, Jr., who had also arrived at the scene, noticed that Stogner was not breathing.  Roughly two minutes later, the deputies called for an ambulance and began to administer CPR on Mr. Stogner.  Mr. Stogner was later transported by ambulance to North Oaks Hospital where he was pronounced dead. *See*, R. Doc. 74, pp. 2-3.

2

Case 3:10-cv-00125-JJB -CN   Document 91   09/22/11   Page 2 of 14

the following documents:

> [A]ny and all records and documents regarding the marriage between or separation/divorce proceeding entitled Adam Donel Stogner and Michelle Stogner, specifically that matter entitled Michelle Morrison Stogner versus Donel Adam Stogner docket no 116,595, 21st Judicial District Court, Livingston Parish, State of Louisiana, including but not limited to, any engagement letters, any pleadings, any discovery, including depositions, any correspondence, including electronic communications, any prenuptial agreements, any billing statements, any invoices, and any notes."

*See*, R. Doc. 84, p. 1-2. The subpoenas directed to the healthcare providers and pharmacy request:

> [A]ny and all medical and/or pharmacy records, including, but not limited to, lab tests, ER records/notes, nurses' notes, physician orders/notes, x-ray reports, diagnostic studies, charts, correspondence, notes (both typed and handwritten), test results, patient information questionnaires, admit and history forms, physical therapy records, records and/or reports of any other health care provider contained in your chart/file, and any other documents in your possession pertaining to medical treatment/care rendered to Michelle Stogner . . ."

*See*, R. Doc. 84-3, p. 4.

On August 24, 2011 and August 29, 2011, counsel for Mrs. Stogner sent letters to all counsel of record indicating objections to the subpoenas at issue. On August 30, 2011, the present motion was filed, seeking to quash the subpoena directed to Mrs. Stogner's former divorce attorney on the basis that it seeks information protected by the attorney-client privilege. The motion further seeks to quash the subpoenas directed to the healthcare providers and pharmacy in part and to have the Court issue a protective order, which limits production to "any and all diagnosis and prognosis reports limited to the date seen, associated billing, and treatment notes from January 1, 2006, to date." Mrs.

3

Stogner's counsel asserts that production of any further information relating to Mrs. Stogner's medical records is in violation of her right to privacy under the Health Insurance Portability and Accountability Act ("HIPAA") and is unduly burdensome and irrelevant to this case. In opposing Mrs. Stogner's present motion, defendants contend that the subpoenas at issue should not be quashed on the basis of the attorney-client privilege and the HIPAA privacy privilege because such privileges have been waived by Mrs. Stogner since she has placed the requested information at issue in this litigation through the claims and allegations asserted in her complaint.

## LAW & ANALYSIS

**I.  Subpoena to divorce attorney:**

Defendants first assert that, because Mrs. Stogner has asserted a wrongful death claim resulting from the defendants' actions/inactions and is claiming to have suffered damages consisting of "(l)oss of love and affection, companionship, and society" and "(l)oss of services of her husband," she has placed her relationship with her husband at issue in this litigation.  Defendants explain that Mr. and Mrs. Stogner were in the process of obtaining a divorce at the time of Mr. Stogner's death[2] and that, during her deposition in this matter, Mrs. Stogner provided certain information concerning her actual intent during the divorce proceedings that places at issue documents, materials, and correspondence pertaining to those divorce proceedings and to Mrs. Stogner's objectives regarding same. Specifically, defendants refer to the following deposition testimony by Mrs. Stogner:

---

[2] On June 19, 2009, Mrs. Stogner actually filed a Rule to Show Cause why the divorce judgment should not be granted, which was set for hearing on July 13, 2009; however, Mr. Stogner died five days prior to that hearing, on July 5, 2009.

4

> A. . . . Neither of us wanted the divorce, and actually going through with it, we would not have actually gone through with it when it came down to it. All of this was to protect myself from anything that he did, if he got in trouble, whatever. My goal was to get him in rehab.
>
> Q. Okay. Exhibit 4 [Rule to Show Cause Why Divorce Judgment Should not be Granted] was filed in June of 2009, correct?
>
> A. Right.
>
> Q. Why did you file Exhibit 4?
>
> A. Prescription period.
>
> Q. That's the only reason?
>
> A. Prescription period.
>
> Q. Okay. Did you ever request your attorney to dismiss the petition for divorce?
>
> A. To dismiss it?
>
> Q. Yes.
>
> A. We talked – we talked about it, but I wanted – we were just getting to the point where we were gonna have to do something either way. Whenever that date came up, we were gonna have to do something there, either draw up some sort of agreement where I – we were– you know, where my asset part was – you know, I guess to word it properly, . . . I didn't want to be held accountable for anything that he had done that I didn't know about . . . And if . . . there was no way to have done that, then we would have just been - just would have went through with it, and we'd have filed a judgment, whatever it is, to dismiss - judgment to dismiss the divorce.

*See*, Deposition of Mrs. Stogner, Exhibit "A" to defendants' opposition, pp. 137-138. Defendants contend that, by claiming in her deposition testimony that she and Mr. Stogner never intended to actually go through with the divorce, Mrs. Stogner placed potentially

5

privileged information at issue through an affirmative act for her own benefit, and considering the nature of Mrs. Stogner's damage claims against defendants (which rely largely upon the health and status of her marital relationship with Mr. Stogner), allowing the attorney-client privilege to protect against disclosure concerning the Stogner's divorce proceedings would be "manifestly unfair" to defendants and undermine one of their defenses.

The undersigned agrees with defendants and finds the reasoning in *Scifres v. Ford Motor Co.*, 2007 Wl 201043 (W.D.Okla. 2007) to be persuasive support for that conclusion. In that case, a surviving spouse asserted a wrongful death action as a result of the death of his wife in an automobile accident. He sought damages for loss of consortium. *Id.*, at *1. Prior to the accident, the plaintiff had retained the services of an attorney to handle an uncontested divorce action against his wife. In his deposition related to the wrongful death suit, the plaintiff testified that, subsequent to filing the divorce action and prior to his wife's fatal accident, he contacted the attorney and informed him that he and his wife had decided not to get a divorce. However, the petition for divorce was filed by the plaintiff, and the divorce action was not dismissed prior to the accident and his wife's death. *Id.* The defendant in the wrongful death suit served the plaintiff's divorce attorney with a notice of deposition and a subpoena duces tecum directing the attorney to produce records pertaining to the divorce, including all pleadings, all correspondence, exhibits, and discovery. *Id.* The plaintiff and the divorce attorney moved to quash the notice of deposition and subpoena duces tecum and for a protective order prohibiting the defendant from deposing the divorce attorney. *Id.* The plaintiff and the divorce attorney asserted that the defendant, by taking the plaintiff's deposition, had already discovered information

6

concerning the contemplation, filing, and abandonment of the divorce action and that continuing to pursue that line of discovery with the divorce attorney would be fruitless, and the burden and expense of the proposed discovery outweighed its likely benefit. *Id.*, at *2. The plaintiff and the divorce attorney further asserted that the mere fact that a divorce petition was filed was not relevant to the action. The defendant argued that the information sought was not cumulative or irrelevant because there was reason to doubt the plaintiff's credibility, and the information went to the issue of the state of the marriage at the time of the wife's death. *Id.*

The court, in *Scifres*, found that the information sought from the divorce attorney was relevant to the plaintiff's loss of consortium claim, in that spousal separation, strains on a marriage, and the quality of a marriage have all been factors considered by courts in determining whether loss of consortium damages should be awarded. *Id.* The court therefore concluded that issues as to when the plaintiff sought a divorce, why he did so, and whether he ever instructed the divorce attorney to abandon the petition were "clearly relevant." The court also found that, while the plaintiff testified concerning the issue during his deposition, the defendant was nevertheless entitled to test the veracity of the plaintiff's testimony and to determine whether and when various consultations with the divorce attorney took place. *Id.*

Finally, relative to the assertion by the plaintiff and the divorce attorney that the communications between them were protected by the attorney-client privilege, the *Scifres* court found that such privilege had been waived. It explained that three (3) factors are consistently applied by courts in evaluating whether or not a party has waived an otherwise applicable privilege: (1) Whether the assertion of the privilege is the result of some

7

affirmative act, such as filing suit or asserting an affirmative defense, by the asserting party; (2) Whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case; and (3) If the privilege was applied, would it deny the opposing party access to information that was vital to the opposing parties' defense. *Id.*, at *2-*3. The court found that all three of those factors weighed in favor of finding that the plaintiff had put his communications with his divorce attorney at issue in the wrongful death suit and thereby waived the attorney-client privilege. *Id.*, at *3. Specifically, the court found that the plaintiff's assertion of the attorney-client privilege was the result of his affirmative act of filing suit and claiming damages for loss of consortium. Secondly, the court found that the substance of the plaintiff's communications with his divorce attorney regarding the state of his marriage and his intentions regarding getting a divorce were at issue in the case in relation to the plaintiff's loss of consortium claim, and thirdly, the court found that, if the privilege was applied, it would have denied the defendant access to vital information needed to defend against the loss of consortium claim. "Whether and when plaintiff actually contacted [his divorce attorney] in order to abandon the divorce petition is highly relevant to the state of the marriage at the time of [the wife's] death and is, thus, highly relevant to the issue of damages for loss of consortium." *Id.*

As in *Scifres*, Mrs. Stogner has alleged loss of consortium damages in this suit, *i.e.*, a loss of the love and affection, companionship, society and services of her husband. As a result, the substance of her communications with her divorce attorney and the records and documents relating to her divorce proceedings are relevant to this suit because they contain information relating to the state of Mr. and Mrs. Stogner's marriage and their intentions regarding getting a divorce. Mrs. Stogner's reasons for filing for divorce and

8

whether or not she actually intended to go through with the divorce are issues that are "highly relevant" to the state of Mr. and Mrs. Stogner's marriage at the time of Mr. Stogner's death and, thus, to Mrs. Stogner's loss of consortium claim. Furthermore, to deny defendants access to information concerning Mrs. Stogner's divorce proceedings and the intent related thereto on the basis of the attorney-client privilege would prohibit defendants from obtaining access to information necessary to defend against Mrs. Stogner's loss of consortium claim. Accordingly, the undersigned finds that Mrs. Stogner's motion to quash the subpoena directed to her former divorce attorney, Charlotte Pugh, should be denied, and compliance with such subpoena shall occur within the next twenty (20) days.

**II.     Subpoenas to health care providers/pharmacy:**

Defendants also contend that Mrs. Stogner has waived any privacy privilege relating to the production of her medical and pharmacy records as a result of her having alleged, in the complaint, that she sustained damages including "(g)rief, emotional distress, mental anguish, and suffering" and "(m)edical expenses." *See*, R. Doc. 1, ¶94. Defendants assert that Mrs. Stogner's medical records became even more relevant when she testified at her deposition that, although the medical conditions she alleges in this suit pre-existed her husband's death, those conditions were worsened as a result of the stress caused by her husband's death and that she has informed her health care providers of that fact.[3] Again,

---

[3] Specifically, defendants refer to the following excerpt from Mrs. Stogner's deposition:

> Q.     Okay. And going back to Exhibit 2 [Petition for Protection for Abuse], your handwriting that you just wrote, you were suffering problems with your rheumatoid arthritis and lupus –
>
> A.     Right.
>
> Q.     – because of increased stress at that time, correct?

9

the undersigned agrees with the defendants' position. Courts have routinely held that, by putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may have otherwise been entitled as to his privacy interests in his medical records. *Midalgo v. McLaughlin*, 2009 WL 890544, *2, n. 5 (N.D.N.Y. 2009); *Bayne v. Provost*, 359 F.Supp.2d 234, 238 (N.D.N.Y. 2005)(noting that "[b]y commencing this action and seeking damages for his medical injuries, [plaintiff] placed his relevant medical condition at issue"); *Hitzig v. Hubbard*, 2011 WL 3360410 (D.Vt. 2010)(Defendants were "clearly entitled" to relevant medical documentation where the plaintiff claimed significant damages, based largely upon physical injuries, and claimed to be facing "large medical expenses for the foreseeable future," thereby putting her medical condition at issue in the suit. The defendants were entitled to medical documentation to confirm the extent of the plaintiff's physical injuries). Furthermore, any argument by Mrs. Stogner that HIPAA serves as an absolute bar to discovery of medical/pharmacy records, lacks merit since such law allows for health information to be disclosed in judicial proceedings. *Id.*, at *3, citing 45 C.F.R. §164.512(e) and *Barnes v. Glennon*, 2006 WL 2811821, *5 (N.D.N.Y. 2006)("Disclosure

---

| | | |
|---|---|---|
| A. | | Right. Any stress whatso – any stress is – can kill you, you know, and adds more and more on to you. And I can tell you, you know, since all of this – I mean since he was killed, the stress has been much, much, worse than this can ever even imagine. |
| Q. | | And I'm sure you've told your doctors that. |
| A. | | Most certainly. Well, I mean, they definitely know this. |
| Q. | | And you've told your doctors your symptoms have worsened since your husband died. |
| A. | | Yes. |

*See*, Deposition of Mrs. Stogner, Exhibit A to defendants' opposition, p. 122-123.

Case 3:10-cv-00125-JJB -CN   Document 91   09/22/11   Page 10 of 14

can be obtained through several means, including when it is in response to a discovery request during litigation or pursuant to a court order); *Bayne*, at 237 ("It is evidently denudate that a purpose of HIPAA was that health information . . . should be made available during the discovery phase." Health care providers and other entities covered by HIPAA may disclose protected health information without patient consent in judicial proceedings). Additionally, where a plaintiff's physical or mental health has been placed at issue because that plaintiff is seeking damages related thereto, the defendant is entitled to explore the truth of the plaintiff's allegations that he/she suffered physical or emotional distress as a result of the defendants' conduct and to determine whether the plaintiff suffered any pre-existing physical or emotional distress that may be the (or an) actual cause of his/her emotional distress.[4]

Finally, Mrs. Stogner's objections to the subpoenas directed to her health care providers/pharmacy on the grounds of burden and overbreadth are misplaced. She has no standing to object to the subpoena on such grounds since she is not the responding party.[5] Mrs. Stogner may only object to a Rule 45 subpoena directed to a non-party on the

---

[4] *See, Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D.Cal. 1999)(The plaintiff sought to recover damages for "emotional pain, suffering, loss of self esteem, and mental anguish." Thus, her emotional health, near the time of the defendants' alleged misconduct, was an issue in the litigation, and she would have to rely on her emotional state at that time to make her case. While the plaintiff could testify to her emotions near the time of the incident and the defendant was free to cross-examine her about the depth of her emotional damage and other factors in her life at that time, "to insure a fair trial, particularly on the element of causation, the court concludes that defendants should have access to evidence that [the plaintiff's] emotional state was caused by something else." "Defendants must be free to test the truth of the plaintiff's contention that she is emotionally upset *because of* the defendants' conduct." Once a plaintiff has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to that element of her claims).

[5] *See, Public Service Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 691204, *5 (W.D.Okla. 2011)(Defendants lacked standing to challenge subpoenas directed to third-parties on the basis that the subpoenas are unduly burdensome. Even if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on grounds that the information imposes an undue burden on the subpoenaed party); *Keybank National Ass'n v. Perkins Rowe Associates, L.L.C.*, 2011 WL 90108, at *2 (M.D.La. 2011)(defendants had standing to challenge third-party subpoenas seeking the defendants' private bank records, but lacked standing to challenge other third-party subpoenas on grounds of relevance or undue burden to the

11

Case 3:10-cv-00125-JJB -CN   Document 91   09/22/11   Page 11 of 14

basis of some personal right or privilege that she has in the requested records, such as the attorney-client privilege or healthcare privacy privilege, as she has done.[6] Because the undersigned finds that those privilege objections have been waived as a result of Mrs. Stogner's allegations in this suit, however, her motion to quash the subpoenas will be denied. Even assuming Mrs. Stogner was permitted to object to the subpoenas directed to her health care providers/pharmacy on the ground that they are overbroad and unduly burdensome and to seek to have the subpoenas restricted in time and scope to "any and all diagnosis and prognosis reports limited to the date seen, associated billing and treatment notes from January 1, 2006, to date," as she has requested, the undersigned finds that she has not presented any legitimate basis for limiting the subpoenas so significantly. She has not, in any way, explained the significance of the January 1, 2006 cutoff date, and the undersigned agrees with the defendants that Mrs. Stogner's medical records from before January 1, 2006 are just as important to defendants' defense of her claims as are her medical records from after that date since Mrs. Stogner testified that her medical conditions and stress pre-existed and worsened after Mr. Stogner's death. Defendants, however, argue that they are entitled to Mrs. Stogner's medical records dating back twenty-three (23) years – all the way back to March of 1988, when Mr. and Mrs. Stogner got married. While the undersigned certainly believes that defendants are entitled

---

subpoenaed non-party); *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 2009 WL 1562851, *3 (D. Neb. 2009)(movant lacked standing to contest third-party subpoenas on grounds of undue burden or inconvenience).

[6] *See, Hertenstein v. Kimberly Home Health Care*, 189 F.R.D. 620, 635 (D.Kan. 1999), quoting *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D.Kan. 1995)(The subpoenaed entity "is the only one entitled to challenge the subpoena under Fed. R. Civ. P. 45(c)(3), "unless a showing is made that [a party] has a personal right to be protected or that the documents are subject to a privilege"); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Jez v. Dow Chemical Co., Inc.*, 402 F.Supp.2d 783 (S.D. Tex. 2005)(A motion to quash or modify a subpoena under Rule 45 may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has alleged some personal privacy right or privilege in the documents sought).

to discover what, if any, health impacts Mrs. Stogner experienced as a result of the state of her marriage with Mr. Stogner, production of twenty-three years worth of medical records is excessive. The issue of any pre-existing causes to Mrs. Stogner's physical and mental health issues can be sufficiently evaluated by an examination of her medical records from the ten (10) years prior to Mr. Stogner's death through the present date. The undersigned does not find, however, that the scope of the records should be limited to "diagnosis and prognosis reports, associated billing, and treatment notes," as Mrs. Stogner requests. Instead, defendants are entitled to the various items requested in the subpoenas directed to the health care providers and pharmacy for July 5, 1999 (*i.e.*, ten (10) years before Mr. Stogner's death) to the present date, and such production is to occur within twenty (20) days of this Order.

Accordingly;

**IT IS ORDERED** that the Motion for Protective Orders and to Quash Defendants' Subpoenas Duces Tecum for Production of Documents Based on Attorney/Client and Medical Records Privileges (R. Doc. 84) filed by plaintiff, Michelle Stogner, is hereby **DENIED** as set forth in the above Ruling.

**IT IS FURTHER ORDERED** that plaintiff's former divorce attorney, Charlotte Pugh, shall comply with the subpoena directed to her by defendants within twenty (20) days of this Order.

**IT IS FURTHER ORDERED** that the health care providers and pharmacy listed below shall comply with the subpoena directed to them by defendants, within twenty (20) days of this Order, by producing the requested documentation for the time period of July 5, 1999 to the present date.

**IT IS FURTHER ORDERED** that a copy of this Order shall be served upon the following: (1) Charlotte Pugh, Attorney at Law, Pugh Law Firm, L.L.C., 10101 Siegen Lane, Building 4, Suite A, Baton Rouge, Louisiana 70810; (2) Dr. Robyn Gernmany, 30819 Louisiana Highway 16, Denham Springs, LA 70726; (3) Dr. Sean Shannon, Ochsner Clinic of Baton Rouge, 9001 Summa Avenue, Baton Rouge, LA 70809; (4) Dr. John Clark, Louisiana Spine and Sports Medical, 7887 Picardy Avenue, Baton Rouge, LA 70809; (5) Dr. Saundra Daigle, 8748 Quarters Lake Road, #8, Baton Rouge, LA 70809; (6) Dr. Elena Cucurull, Baton Rouge Clinic, 7373 Perkins Road, Baton Rouge, LA 70808; (7) Mayo Medical Clinic, LLC, 3401 North Boulevard, Suite 410, Baton Rouge, LA 70806; (8) Dr. Gregory Heroman, 711 Colonial Drive, Suite D, Baton Rouge, LA 70806; (9) James Drug Store, Inc., 257 Florida Boulevard, S.E., Denham Springs, LA 70726; and (10) Mayo Clinic, 4500 San Pablo Road, Jacksonville, Florida 32224.

Signed in chambers in Baton Rouge, Louisiana, September 21, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

14

Case 3:10-cv-00125-JJB -CN   Document 91   09/22/11   Page 14 of 14